UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TRUIST BANK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| F/V BELLA SKY (O.N. 580932), HER ENGINES, TACKLE, FURNISHINGS, EQUIPMENT, SUPPLIES, FISHING PERMITS, AND OTHER APPURTENANCES, *in rem*, | * | Civil Action No. 21-cv-10841-ADB |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER
ON LDA'S MOTION TO INTERVENE**

BURROUGHS, D.J.

**I.     BACKGROUND**

On May 21, 2021, Plaintiff Truist Bank ("Plaintiff") filed its verified complaint seeking the *in rem* arrest of the F/V Bella Sky (O.N. 580932) (the "Vessel"). [ECF No. 1]. Plaintiff asserts that Bella Sky, LLC, the Vessel's owner, has defaulted on a promissory note that it executed with Plaintiff. [Id. ¶¶ 5–11]. On July 12, 2021, L.D. Amory and Company, Incorporated ("LDA") moved to intervene as a right pursuant to Federal Rule of Civil Procedure 24(a), [ECF Nos. 21, 22], and filed a proposed intervenor complaint, [ECF No. 23]. LDA asserts that it is entitled to intervene because it has maritime liens on, and therefore an interest in, the Vessel. [ECF No. 22 at 1]. Bella Sky, LLC, which asserts its own claim in this action, [ECF No. 17], opposed the motion to intervene on July 26, 2021, [ECF No. 33], and LDA replied on

August 5, 2021, [ECF No. 37]. Plaintiff does not oppose LDA's motion to intervene. For the reasons set forth below, LDA's motion is GRANTED.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 24(a)(2),

> a would-be intervenor must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest.

Ungar v. Arafat, 634 F.3d 46, 50–51 (1st Cir. 2011). Bella Sky, LLC contends that LDA is unable to demonstrate that it timely filed its motion or that it has an interest in the Vessel. [ECF No. 33 at 7–17].

### A. Timeliness

Bella Sky, LLC argues that LDA's motion is untimely under Rule C(6) of the Supplemental Admiralty and Maritime Claims Rules because LDA did not file a claim by July 9, 2021, as required by the Court. [ECF No. 33 at 7–8]. "Rule C of the Supplemental Admiralty and Maritime Claims Rules contains special provisions governing actions in rem." Ramírez-Alonso v. M/Y the Comm'r, No. 20-cv-01451, 2020 WL 7631691, at *2 (D.P.R. Dec. 22, 2020). Under Supplemental Rule C(6), "a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest . . . within 14 days after the execution of process, or . . . within the time that the court allows." Supp. R. C(6)(a)(i). Supplemental Rule C(6), however, is not applicable to LDA because it does not assert that it has "a right of possession or any ownership interest," and is instead asserting a maritime lien. [ECF No. 37 at 1]. Because LDA seeks to assert its maritime lien, the "proper procedural vehicle" for LDA "to enter the lawsuit . . . [is] to file a motion to

intervene pursuant to Rule 24 . . . ." Martin Energy Servs., LLC v. M/V Bourbon Petrel, Nos. 14-2986, 15-79, 15-81, 2015 WL 2354217, at *5 (E.D. La. May 14, 2015); see also Supp. R. C(6) advisory committee's notes to 2000 amendment (stating that "[i]n an admiralty and maritime proceeding . . . , a statement is filed only by a person claiming a right of possession or ownership.  Other claims against the property are advanced by intervention under Civil Rule 24 . . . .").  Accordingly, the timeliness inquiry is governed by Rule 24, rather than Supplemental Rule C(6).

> As the First Circuit has explained, four factors
>
> inform the timeliness inquiry [for Rule 24]: (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.  Each of these factors must be appraised in light of the posture of the case at the time the motion is made.

R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009) (internal citations omitted).  Here, LDA moved to intervene on July 12, 2021 (just three days after claims under Supplemental Rule C(6) were due), the case remains in its early stages, and no scheduling order has been entered.  Thus, any prejudice to the existing parties is minimal and, as described infra, because any sale of the Vessel could prevent LDA from exercising its rights, it may be prejudiced if it is not allowed to intervene.  Thus, the factors weigh in LDA's favor, and the Court finds that LDA's motion was timely filed.

### B. LDA's Interest and its Ability to Protect that Interest

Bella Sky, LLC also argues that LDA cannot show that it has an interest in the Vessel because LDA cannot establish that it has a maritime lien.  [ECF No. 33 at 9–17].  Ultimately, Bella Sky, LLC's arguments on this point boil down to disputes of fact that must be resolved at a

3

later stage of the case.  First, Bella Sky, LLC asserts that LDA has not provided any necessaries to the Vessel.  [Id. at 10–12].  "To establish a maritime lien on a vessel, a claimant must show that it provided 'necessaries' to the vessel at the order of the vessel's owner or a person authorized by the owner, including a 'charterer.'"  Portland Pilots, Inc. v. Nova Star M/V, 875 F.3d 38, 44 (1st Cir. 2017) (citation and footnote omitted).  Under the Federal Maritime Liens Act (the "FMLA"), "[n]ecessaries includes repairs, supplies, towage, and the use of a dry dock or marine railway, as well as most goods or services that are useful to the vessel, keep her out of danger and enable her to perform her particular function."  Id. (internal quotation marks and citations omitted).  Consistent with the purpose of the FMLA, "necessaries" is interpreted broadly, and a key inquiry is the purported necessaries' "role in enabling the vessel to continue in its intended function."  Id. at 44–45.

When considering the motion to intervene, the Court must take as true the non-conclusory allegations and evidence submitted in support of the motion to intervene.  B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006).  In its intervenor complaint, LDA alleges:

> Beginning in or about January 1, 20191 [sic] and continuing through the present, LDA provided certain supplies (i.e. ice, fuel and materials) and financing for the operation and benefit of the Vessel, has made payments on the ship mortgage, credit card bills, and other debts of the Vessel, and has provided funding for maintenance, repairs and berthing for the Vessel, all of which constitute "necessaries" within the meaning of the [FMLA].

[ECF No. 23 ¶ 6].  Taking these allegations as true, the Court cannot say that the supplies and services that LDA claims it has provided to the Vessel are insufficient to establish a maritime lien.  For example, on their face, supplies such as fuel and ice appear to be "useful" to the Vessel "and enable her to perform her particular function."  Portland Pilots, Inc., 875 F.3d at 44 (citation omitted).

Second, Bella Sky, LLC argues that LDA is unable to establish a maritime lien because its close relationship with the Vessel makes it a joint venturer. [ECF No. 33 at 12–17]. "Joint venturers are incapable of holding maritime liens 'because they are not "strangers to the vessel," but rather occupy a position akin to that of the vessel's owner.'" Leblanc v. M/V Naumachia, No. 04-009, 2005 U.S. Dist. LEXIS 5152, at *13 (D.R.I. Jan. 4, 2005) (quoting Sasportes v. M/V Sol de Copacabana, 581 F.2d 1204, 1208 (5th Cir. 1978)). Courts generally analyze five factors to determine if a joint venture exists:

> (1) the intention of the parties to create a joint venture; (2) joint control or joint right of control; (3) joint proprietary interests in the subject matter of the venture; (4) the right of both venturers to share in the profits; and (5) the duty of both venturers to share in the losses.

Id. at *14. Bella Sky, LLC asserts that several facts demonstrate that a joint venture exists, including that: (1) LDA's secretary and/or president, C. Meade Amory, is a co-owner of Bella Sky, LLC, which ultimately owns the Vessel, [ECF No. 33 at 13]; (2) LDA guaranteed the Vessel's mortgage, [id. at 15]; and (3) LDA provided financing for the Vessel's operation, but never required any promissory notes or formal business arrangement, which would be expected in a third-party business relationship, [id. at 16]. LDA, in turn, argues that while the facts may show that LDA and Bella Sky, LLC had a close business relationship, this alone does not establish a joint venture and other facts counter against such a finding, including that LDA did not direct the operation of the Vessel and corporate formalities distinguish LDA from C. Meade Amory. [ECF No. 37 at 7]. Due to the disputed and limited record before it, the Court cannot fully assess the relevant factors to determine whether LDA is a joint venturer. Such an inquiry is better suited to a later stage of the litigation. Accordingly, based on LDA's allegations in its intervenor complaint, [ECF No. 23], it has sufficiently demonstrated that it has an interest in the Vessel.

As to the potential threat to LDA's interest required by Rule 24(a), Plaintiff seeks a sale of the Vessel, [ECF No. 1 at 5 ¶ 5], and if such a sale is ordered, LDA's ability to assert its *in rem* claims could be foreclosed. Finally, with regard to whether an existing party adequately represents its interest, LDA asserts that Plaintiff and Bella Sky, LLC are directly adverse to it. [ECF No. 22 at 3]. The Court agrees that the other parties in this case cannot adequately represent LDA's interest. Plaintiff asserts its own lien against the Vessel and Bella Sky, LLC, as the Vessel's owner, is not incentivized to protect LDA's ability to recover any money it may be owed.

### III.     CONCLUSION

In sum, because LDA has satisfied the requirements for intervention under Rule 24(a), its motion to intervene is <u>GRANTED</u> and LDA is directed to file its intervenor complaint. Within fourteen (14) days after LDA's complaint has been filed and answered, the parties shall jointly file a proposed schedule, or, if they are unable to reach an agreement, individual proposed schedules.

**SO ORDERED.**

October 18, 2021                                                                                   /s/ Allison D. Burroughs
                                                                                                               ALLISON D. BURROUGHS
                                                                                                               U.S. DISTRICT JUDGE